## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DARYA MCVAY,** | |
| **Plaintiff,** | Case No. 3:20-cv-00764 (CSH) |
| **v.** | |
| **ANDREAS STEFANOU and SPA THEA, LLC,** | **JULY 30, 2021** |
| **Defendants.** | |

## MEMORANDUM AND ORDER ON
## <u>DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE</u>

**HAIGHT, Senior District Judge:**

Plaintiff Darya McVay ("McVay") filed this action against Andreas Stefanou ("Stefanou") and Spa Thea, LLC ("Spa Thea," and collectively with Stefanou, "Defendants"), asserting employment-related discrimination claims pursuant to 42 U.S.C. § 2000e-2 and 42 U.S.C. § 1981, as well as pendent state-law claims for violation of McVay's rights under Conn. Gen. Stat. § 46a-60(b)(1), for intentional infliction of emotional distress, and for negligent infliction of emotional distress. *See generally* Doc. 1 ("Compl."). Defendants thereafter moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. *See generally* Doc. 12 ("Defs.' Mot."). McVay did not immediately oppose Defendants' motion, filing a response only after this Court docketed a notice pursuant to Local Civil Rule 41(a). *See* Doc. 14 ("Pl.'s Opp."). Defendants have moved to strike McVay's opposition for failure to comply with the Local Rule. *See* Doc. 15 ("Defs.' Obj."). This Ruling resolves these motions.

# I.  BACKGROUND

## A.  Factual Allegations

The following factual allegations are drawn from McVay's Complaint and are accepted as true for the purposes of this motion only.

McVay is a licensed hairstylist and a resident of Ridgefield, Connecticut.  Compl. at 1 ¶ 1, 3 ¶ 8.  Stefanou is the proprietor or "owner/manager" of Andrew Stefanou Salon and Spa, which maintains locations in Darien and Orange, Connecticut.  *Id.* at 2 ¶ 2, 3 ¶ 9.  Spa Thea is a limited liability company that owns and operates Andrew Stefanou Salon and Spa.  *Id.* at 3 ¶ 10. McVay alleges that Defendants employ at least 15 individuals, and that they began to employ McVay as a hairstylist at both the Darien and Orange locations on or about November 17, 2019. *Id.* at 3 ¶¶ 11–12.  McVay believes that, at all relevant times detailed in her Complaint, Stefanou was acting on behalf of Spa Thea.  *Id.* at 4 ¶ 20.

At some time after McVay began to work at the Andrew Stefanou Salon and Spa, Stefanou instructed McVay not to disclose to clients that she practices the Pagan religion.  *See id.* at 3 ¶ 13.  Stefanou repeated this instruction to McVay during a meeting that occurred on December 22, 2019.  *Id.*  During the December 22, 2019 meeting, Stefanou also accused McVay of selling her own products to salon clients.  *Id.* at 3 ¶ 14.  McVay denied Stefanou's charge that she was selling her own products to clients of the salon.  *Id.*

At a meeting with Stefanou that occurred on January 20, 2020, McVay requested permission to work full-time at the salon's Darien location, in view of the fact that that branch was busier.  *Id.* at 3 ¶ 15.  Stefanou deferred responding to this request to a later date.  *Id.* Stefanou meanwhile asked McVay if she would take classes offered by the salon.  *Id.* at 3 ¶ 16. McVay said that some of the salon's classes possibly conflicted with her modeling assignments

at Western Connecticut State University.  *Id.*  Stefanou thereupon asked McVay if she modeled in the nude.  *Id.*

During the January 20, 2020 meeting, McVay additionally mentioned to Stefanou that she recently had attended a Russian Orthodox religious service with her family.  *Id.* at 4 ¶ 17. Stefanou then asked McVay whether the church's religious icons had fallen off the walls when she entered the building; whether McVay's boyfriend was a warlock; whether McVay's boyfriend's mother was a witch; whether McVay's sisters were witches; and whether McVay wanted Stefanou to buy her a broomstick.  *Id.*  Stefanou further asked McVay if she was "crazy," in the process pointing his finger at his head while making a circular motion.  *Id.* at 4 ¶ 18.

In response to Stefanou's statements, McVay believed that her working conditions had become hostile and intolerable, and that she was subject to a constructive dismissal.  *Id.* at 4 ¶ 19. McVay thereupon left the premises in tears.  *Id.*

**B.  Procedural Background**

McVay filed her Complaint on June 2, 2020, bringing five claims based on the facts set forth above.  McVay claims that she was subject to a discriminatory employment practice based on her religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2*.  Id.* at 4–5 ¶¶ 21–25.  McVay also claims that the same conduct violated her rights pursuant to 42 U.S.C. § 1981 (as amended by the Civil Rights Act of 1991), and that it constituted a discriminatory employment practice based on her religious creed in violation of Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1).  *Id.* at 5 ¶¶ 26–28.  Finally, McVay brings common law claims both for intentional infliction of emotional distress and for negligent infliction of emotional distress, again arising out of the same

conduct. *Id.* at 5–6 ¶¶ 29–40.  McVay seeks damages for all of her claims, including punitive damages. *Id.* at 7.

McVay asserts that this Court has subject matter jurisdiction over her federal law claims on the basis of 28 U.S.C. § 1331, and that the Court has subject matter jurisdiction over the CFEPA claim on the basis of 28 U.S.C. § 1367.[1]  *Id.* at 2 ¶¶ 4–6.  Although not explicitly stated in the Complaint, it appears that 28 U.S.C. § 1367 additionally would be the appropriate basis for jurisdiction over McVay's Connecticut common law claims.  *See id.* at 1–2 ¶¶ 1–6.  McVay received a Dismissal and Notice of Rights ("Notice of Suit Rights") from the federal Equal Employment Opportunity Commission ("EEOC") on March 4, 2020.  *Id.* at 2 ¶ 7; *see also id.* at 9 ("Ex. A").

Defendants were served with process on June 23, 2020, *see* Doc. 10, and timely moved to dismiss the Complaint on July 14, 2020 pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See generally* Defs.' Mot.  In their memorandum supporting their motion, Defendants articulate two arguments: first, that because McVay has not exhausted her administrative remedies before the EEOC and the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), this Court lacks subject matter jurisdiction over *all* of McVay's claims; and second, that *all* of McVay's claims against Stefanou individually must be dismissed for failure to state a claim, because individual agents of an employer-defendant are not subject to liability under Title VII.  *See* Doc. 12-1 ("Defs.' Mem.") at 2–7.

McVay did not respond to Defendants' motion within the 21 days contemplated by this District's Local Rules.  *See* D. Conn. L. Civ. R. 7(a)(2).  After more than six months of inactivity

---

[1] McVay additionally invokes 28 U.S.C. §§ 1343 and 1366 as bases for this Court's jurisdiction over the CFEPA claim.  However, neither provision is relevant or applicable to a state-law claim such as McVay's CFEPA claim: 28 U.S.C. § 1343 grants this Court jurisdiction over civil rights cases brought pursuant to the federal Constitution and certain acts of Congress, while 28 U.S.C. § 1366 deals with the construction of the terms "laws of the United States" and "Acts of Congress" in chapter 85 of title 28, U.S.C.  *See generally* 28 U.S.C. §§ 1343, 1366.

by McVay, the Clerk of Court docketed a notice pursuant to Local Rule 41(a), warning McVay of the case's possible dismissal. *See* Doc. 13. McVay thereafter filed a document styled as an objection to Defendants' motion to dismiss. *See generally* Pl.'s Opp. The next day, Defendants moved to strike McVay's submission, and additionally requested that the Court enter an order dismissing the action with prejudice. *See* Defs.' Obj. at 1. Defendants argue that McVay's response to the Local Rule 41(a) notice should be stricken because "Plaintiff has not provided any satisfactory explanation of why this case should not be dismissed," and additionally state that "[t]he objection does not address the merits of the Motion to Dismiss." *Id.* at 2.

## II.  LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2] "In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam) (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) and *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003))

---

[2] Federal District Courts, such as this Court, are courts of *limited* subject matter jurisdiction, able to hear and decide only those types of cases to which the federal Constitution extends the judicial power of the United States, and of which Congress has granted the District Courts jurisdiction. 13 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3522 (3d ed. 2020) (collecting cases). The Court's lack of subject matter jurisdiction over an action is a non-waivable defect, and it can be raised at any time, including by the Court *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002) and *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

(internal quotation marks and emendation omitted).  Ultimately, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

Meanwhile, "[a] motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed 'merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof.'" *Zuro v. Town of Darien*, 432 F. Supp. 3d 116, 121 (D. Conn. 2020) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In determining whether a plaintiff has met this standard, the Court accepts the factual allegations in a complaint as true and "draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).  "Although a court must accept as true all the factual allegations in the complaint, that requirement is 'inapplicable to legal conclusions.'" *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).  "[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679

Finally, with respect to Defendants' motion to strike, the Court notes that this District's Local Rules provide in relevant part that "[f]ailure to submit a memorandum in opposition to a motion *may* be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2) (emphasis added). However, whether the Court ultimately decides to consider an untimely response to a motion is a matter committed to the Court's discretion. *Cf. Watson v. Geithner*, 355 F. App'x 482, 483 (2d Cir. 2009) (court of appeals "reviews a district court's decision to decline to consider an untimely response to summary judgment motion for abuse of discretion." (citing *Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir. 1984))).

## III. DISCUSSION

### A. Defendants' Motion to Strike

The Court first shall consider Defendants' motion to strike, since the Court's decision to consider (or not) McVay's opposition ultimately bears upon resolution of the substance of Defendants' motion to dismiss. Defendants argue that McVay's filing "did not comply with this Court's Notice." Defs.' Obj. at 2. In particular, Defendants contend that McVay's submission "does not address the merits of the Motion to Dismiss. Additionally, contrary to the requirements contained in the Court's Notice, the Plaintiff has not provided any satisfactory explanation of why this case should not be dismissed." *Id.*

As an initial matter, the Court finds that Plaintiff's submission—although filed at the eleventh hour—evidently satisfies the requirements of Local Rule 41(a). The rule provides that, once the Clerk of Court has given notice of the proposed dismissal, "[i]f such notice has been given *and* no action has been taken in the action in the meantime *and* no satisfactory explanation is submitted to the Court within twenty-one (21) days thereafter, the Clerk shall enter an order of

dismissal." D. Conn. L. Civ. R. 41(a) (emphasis added). McVay, through her submission, here has taken an action "in the meantime": notwithstanding Defendants' statement to the contrary, McVay has in fact submitted a document substantially responding to Defendants' arguments in support of their motion. Accordingly, it appears that not all conditions precedent for an order of dismissal are present, although the Court is concerned by McVay's failure to explain her extreme delay.[3]

Turning to the issue of whether the substance of McVay's submission should be considered, the Court finds that it should exercise its discretion to do so. Defendants have moved to dismiss partly on the basis of Rule 12(b)(1), disputing whether McVay has in fact exhausted her administrative remedies, a putative failure which is said to be jurisdictional. As noted *supra*, in furtherance of resolving a Rule 12(b)(1) motion where specific facts are in dispute, the Court is empowered to consider all available evidence. The Court finds that Plaintiff's submission contains statements pertaining to the status of proceedings before the CCHRO, which bear directly upon the ability of this Court to hear her CFEPA claim. The Court concludes that fair determination of that issue requires that the Court take into account such statements. Furthermore, as will be explored at greater length below, it is clear to the Court that Plaintiff's Complaint "provide[s] sufficient grounds to deny" Defendant's motion, at least in

---

[3] The Court would reach the same conclusion were it to construe Defendants' motion to strike as a motion to dismiss for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it," and that such dismissal shall have the effect of a judgment on the merits. Fed. R. Civ. P. 41(b). The Second Circuit has instructed that, in evaluating such a motion, a District Court must analyze "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)). Not all of these factors have been satisfied at the present juncture: notably, Plaintiff only has been cautioned once regarding about possible consequences of any delay—*i.e.*, by the Local Rule 41(a) notice—and the Court also has no basis on which to evaluate whether Defendants likely will be prejudiced by any further delays in this litigation. Therefore, dismissal pursuant to Rule 41(b) would not be proper on the current record.

part.  *See* D. Conn. L. Civ. R. 7(a)(2).  There is therefore no sound basis to exclude consideration of Plaintiff's opposition, to the extent it speaks to the relevant issues.

Accordingly, Defendants' motion to strike is DENIED.

## B.  Subject Matter Jurisdiction Over McVay's Claims

Defendants' first argument for dismissal concerns Plaintiff's purported failure to exhaust her administrative remedies.  Specifically, Defendants assert that McVay filed a complaint with the CCHRO in addition to a complaint with the EEOC, and that no release of jurisdiction has been granted by or obtained from the CCHRO.  *See* Defs.' Mem. at 3.  Without such a release, Defendants argue, none of McVay's claims cannot proceed in this Court.  *Id.* at 3–5.  Because Defendants' frame their argument in terms of this Court's jurisdiction, the Court shall construe this portion of Defendants' motion as being made pursuant to Rule 12(b)(1).

### 1.  Federal Law Claims

This Court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "For statutory purposes, a case can 'aris[e]' under federal law in two ways.  Most directly, a case arises under federal law when federal law creates the cause of action asserted. . . . As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions . . . and accounts for the vast bulk of suits that arise under federal law . . . ."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citations omitted).  *See also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79 (2012) ("[W]hen federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331. That principle endures *unless* Congress divests federal courts of their § 1331 adjudicatory authority." (emphasis added and footnote omitted)).

In the case at the bar, McVay asserts two federal statutory causes of action—specifically, claims pursuant to 42 U.S.C. § 2000e-2 and 42 U.S.C. 1981—and accordingly the threshold for dismissal for lack of subject matter jurisdiction is high.  *See Spencer v. Casavilla*, 903 F.2d 171, 173 (2d Cir. 1990) ("Little is needed for a plaintiff to assert a claim sufficient to give the federal court jurisdiction.  Where the complaint 'is so drawn as to seek recovery directly under the Constitution or laws of the United States,' . . . the district court *must* entertain the suit unless the federal claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" (emphasis added) (quoting *Bell v. Hood*, 327 U.S. 678, 681, 682–83 (1946))).  Even if McVay's federal claims ultimately are somehow substantively defective, the Court should not dismiss them for want of jurisdiction.  *Id.* ("The court should not dismiss a complaint asserting a nonfrivolous claim under federal law for lack of jurisdiction even if the complaint fails to state a claim upon which relief can be granted."); *see also Antwi v. Montefiore Med. Ctr.*, No. 14 Civ. 840 (ER), 2014 WL 6481996, at *6 (S.D.N.Y. Nov. 18, 2014) ("Even where the Court anticipates that dismissal under Rule 12(b) (6) would be proper, it should not dismiss an action for lack of jurisdiction.").

Defendants' motion, insofar as McVay's federal law claims are concerned, fails to make the requisite showing that subjection matter jurisdiction over such claims does not exist.  Indeed, the weight of authority is directly contrary to the position argued by Defendants.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Consistent with this principle, the Second Circuit has held that a plaintiff's failure to exhaust administrative remedies is not a *jurisdictional* defect that would deny this Court the

power to adjudicate the plaintiff's Title VII claim. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[W]hen our decisions have turned on the question of whether proper administrative exhaustion is a jurisdictional prerequisite rather than a waivable condition precedent to bringing suit, we have consistently chosen the latter approach . . . . Accordingly, we today reiterate what was explicit in *Pietras*, implicit in *Cruz*, and what the overwhelming majority of other circuits have held: 'as a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.'" (citations omitted)); *see also Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("The weight of precedent demonstrates that administrative exhaustion is not a jurisdictional requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses."). Instead of being a jurisdictional requirement, the Second Circuit has held that a plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense.").

As McVay identifies in her opposition, *see* Pl.'s Opp. at 2–3, McVay has provided uncontradicted evidence demonstrating that she has exhausted her administrative remedies with respect to her Title VII claim, having filed a copy of the EEOC's Notice of Suit Rights with her Complaint, *see* Ex. A. At this juncture, such a showing is more than sufficient for McVay's Title VII claim to proceed. Even if exhaustion of administrative remedies *were* a jurisdictional requirement, rather than a substantive component of McVay's Title VII claim, Defendants could not prevail in their argument in the face of such uncontested evidence.[4]

---

[4] Furthermore, there is no requirement that a Title VII claim released by the EEOC be dismissed where a CFEPA claim filed with the CCHRO may not yet have been administratively exhausted. *See, e.g.*, *Winter v. Connecticut*,

Meanwhile, other authority makes clear that Section 1981 claims are not subject to any requirement that plaintiffs exhaust administrative remedies. *See, e.g.*, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1316 (2d Cir. 1995) ("Section 1981 and Title VII provide distinct causes of action and different liability schemes. Unlike a Title VII plaintiff, for example, a § 1981 claimant need not exhaust EEOC remedies before filing suit against an employer."), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998); *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 89–90 (2d Cir. 1983) (citing *Gresham v. Chambers*, 501 F.2d 687, 690–91 (2d Cir.1974)); *McKnight v. Mental Health Ass'n of Conn.*, No. 13 Civ. 1436, 2015 WL 5116766, at *2 (D. Conn. Aug. 28, 2015) (stating that plaintiff's failure to adequately plead exhaustion of administrative remedies before bringing Title VII claim "does not affect [plaintiff's] Section 1981 claim, because administrative exhaustion is not required by that statute").

In sum, Defendants' argument that exhaustion of administrative remedies has not been satisfied with respect to the Title VII claim must fail, and there is no tenable argument that exhaustion is required for McVay to pursue a Section 1981 claim. Therefore, the Court finds that it has subject matter jurisdiction over McVay's federal law claims.

### 2.  State Law Claims

Having established that this Court possesses jurisdiction over McVay's federal law claims, the Court now considers whether it may exercise supplemental jurisdiction over McVay's CFEPA and common law intentional and negligent infliction of emotional distress claims.

---

No. 14 Civ. 1139 (VLB), 2016 WL 6122926, at *3–*5 (D. Conn. Oct. 19, 2016) (on motion for judgment on the pleadings, denying motion as to certain Title VII claims where plaintiffs made allegations of EEOC exhaustion and alleged sufficient facts to make out *prima facie* claims of discrimination, while granting motion as to CFEPA claims in part because of plaintiffs' failure to allege exhaustion of CCHRO remedies).

"Supplemental jurisdiction (formerly referred to as pendent jurisdiction) is the authority of a federal court to exercise jurisdiction over a nonfederal claim between parties litigating other matters properly before the court . . . ." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 284 (S.D.N.Y. 2019) (citations omitted).  Congress's grant of supplemental jurisdiction to the District Courts is codified at 28 U.S.C. § 1367, which directs that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "'Federal and state claims form one case or controversy,' and thus satisfy section 1367(a), if they 'derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding.'"  *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 613 F. Supp. 2d 437, 440–41 (S.D.N.Y. 2009) (footnote omitted) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)).

"Although Section 1367(a) uses the term 'shall' to confer supplemental jurisdiction, a district court has discretion in deciding whether to exercise its supplemental jurisdiction." *In re Teva Sec. Litig.*, No. 17 Civ. 558 (SRU), 2021 WL 231130, at *16 (D. Conn. Jan. 22, 2021) (citing *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011)), *reconsideration denied*, 2021 WL 1197805 (D. Conn. Mar. 30, 2021).  This discretion however is limited by the factors enumerated in 28 U.S.C. § 1367(c).  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) ("In order for a district court to decline to exercise supplemental jurisdiction, 'where section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection

1367(c).'" (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011))).

Among other considerations affecting the Section 1367 jurisdictional analysis, the Second Circuit has instructed that "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim. . . . This includes any restrictions set by the state on whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991). Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." *Moodie v. Fed. Rsrv. Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995).

Aggrieved employees do not possess an unconditional private right of action under the CFEPA. Only an employee who has filed a claim with the CCHRO, *and* "has obtained a release of jurisdiction in accordance with section 46a-83a or 46a-101, may bring an action . . . ." Conn. Gen. Stat. § 46a-100. *See also* Conn. Gen. Stat. § 46a-101(a) ("No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."). The Connecticut Supreme Court thus has held:

> Read in its entirety, the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the [CCHRO]. It is the [CCHRO] that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination. . . . The plaintiff, having failed to follow the administrative route that the legislature has prescribed for his claim of

discrimination, lacks the statutory authority to pursue that claim in the Superior Court.

*Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 216, 491 A.2d 1096, 1101 (1985) (citations omitted).

Following Connecticut precedent, the courts of this District have concluded that, unlike in the Title VII context, exhaustion of administrative remedies *is* to be treated as a jurisdictional requirement for a plaintiff's CFEPA claim, and duly have held that no CFEPA claim may be heard by the District Court absent a release of jurisdiction by the CCHRO.  *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 271–72 (collecting cases); *see also, e.g.*, *Grande v. Hartford Bd. of Educ.*, No. 19 Civ. 00184 (KAD), 2020 WL 70815, at *3–*5 (D. Conn. Jan. 7, 2020) (holding that District Court lacked subject matter jurisdiction over CFEPA claim where CCHRO dismissed case upon finding no reasonable cause for claims and did not issue a release of jurisdiction).[5]

That a plaintiff may have exhausted his or her EEOC remedy, and therefore is able to bring a Title VII claim in his or her own lawsuit, does not permit the plaintiff to bring a CFEPA claim simultaneously.  A plaintiff *must* have secured a release of jurisdiction from CCHRO before he or she can proceed with any CFEPA claim.  *See, e.g.*, *Edwards v. William Raveis Real Estate Inc.*, No. 08 Civ. 1907 (JCH), 2009 WL 1407233, at *3 (D. Conn. May 19, 2009) (collecting cases); *see also Winter v. Connecticut*, No. 14 Civ. 1139 (VLB), 2016 WL 6122926, at *3–*4 (D. Conn. Oct. 19, 2016).  Absent allegations or evidence of such a release by CCHRO, a CFEPA claim must be dismissed for want of jurisdiction.  *See, e.g.*, *Duarte v. W. Conn. Health Network*, No. 16 Civ. 1757 (JAM), 2017 WL 3499937, at *1 (D. Conn. July 11, 2017)

---

[5] The Court previously has recognized the incongruity between the non-jurisdictional approach to administrative exhaustion applicable to Title VII, with the jurisdictional approach to such exhaustion applicable to the CFEPA.  *See Anderson*, 718 F. Supp. 2d at 272 n.32.  Absent Connecticut appellate authority to the contrary, however, the Court shall continue to apply the jurisdictional approach to the issue of administrative exhaustion for CFEPA claims.

(dismissing CFEPA claims where "[p]laintiff's complaint does not attach a copy of a release of jurisdiction letter from [CCHRO], nor does the complaint allege that plaintiff received such a letter"); *Sebold v. City of Middletown*, No. 05 Civ. 1205 (AHN), 2007 WL 2782527, at *19 (D. Conn. Sept. 21, 2007) (at summary judgment, dismissing CFEPA claim because plaintiff "has not demonstrated that she has exhausted her administrative remedies or obtained a release of jurisdiction," and "[w]hile [plaintiff] argues that the right-to-sue letter she received from the EEOC is sufficient to exhaust her administrative remedies under the CFEPA, this argument has no merit").

In the case at the bar, McVay's Complaint contains no allegations of her ever having secured a release of jurisdiction from CCHRO, much less having filed a complaint with the agency.  In addition, by way of her opposition to Defendants' motion, McVay "acknowledges that out of an excess of caution . . . she has also *pro se* presented her claims . . . to [CCHRO]. Regrettably, [CCHRO's] review and investigation of her claims has been severely delayed by the effects of the Covid-19 pandemic and, as a consequence, has not reached a conclusion."  Pl.'s Opp. at 3.

In view of McVay's deficient pleading regarding CCHRO filing and exhaustion, and her subsequent admission that no release has been obtained, the Court must decline to exercise supplemental jurisdiction over the CFEPA claim.  It is clear that, under these circumstances, McVay could not bring her CFEPA claim in Connecticut Superior Court, and that McVay should not be able to proceed with such a claim here.  Accordingly, the Court DISMISSES McVay's CFEPA claim.  *See* 28 U.S.C. § 1367(c)(4).  This dismissal is without prejudice: if a release of jurisdiction ultimately is procured from CCHRO, and the CFEPA claim remains timely, McVay may move to amend her Complaint to incorporate that cause of action.

While McVay's failure to secure a CCHRO release prevents this Court from hearing her CFEPA claim, administrative exhaustion presents no hurdle for her emotional distress claims. Like McVay's Section 1981 claim vis-à-vis her Title VII claim, in the federal law context, McVay's emotional distress claims are causes of action independent of her CFEPA claim, and no exhaustion requirement applies to them. *See, e.g.*, *Chassie v. Sprigs & Twigs, Inc.*, No. KNLCV146020965S, 2014 WL 7525499, at *4 (Conn. Super. Ct. Nov. 21, 2014) (collecting cases). Since Defendants present no argument that the emotional distress claims do not arise out of the same facts as the federal law claims—and the Court itself perceives the claims' close factual linkage—the Court shall exercise supplemental jurisdiction over McVay's claims for intentional and negligent infliction of emotional distress. *See* 28 U.S.C. § 1367(a).

## C.  McVay's Failure to State a Claim

Having established that this Court has subject matter jurisdiction over Plaintiff's federal law claims and may exercise jurisdiction over Plaintiff's common law intentional and negligent infliction of emotional distress claims, the Court turns to Defendants' argument that Plaintiff's claims against Stefanou, in his individual capacity, should be dismissed. The Court construes this as an argument for dismissal pursuant to Rule 12(b)(6).

Defendants' argument for dismissal is a simple one: citing authority from the Second Circuit, as well as the First and Fifth Circuits, Defendants assert that there is no liability for individual agents of an employer under Title VII. *See* Defs.' Mem. at 6–7. Defendants contend that, since Stefanou is the agent of Spa Thea, "[u]nder both controlling law and common-sense, the claims against [Stefanou] should be dismissed in their entirety." *Id.* at 7. In opposition, meanwhile, McVay argues that Stefanou should not be relieved from liability because Spa Thea and Stefanou "are one and the same and acted as one." Pl.'s Opp. at 3.

Notwithstanding the apparent intention to dismiss all claims as to Stefanou, Defendants' argument only addresses the law applicable to McVay's Title VII claim.  The Court accordingly only will analyze whether Stefanou may be sued for violation of Title VII in his individual capacity.[6]

Defendants are correct that there is no individual liability for employees, agents, or supervisors of employer-entities under Title VII.  *Tomka*, 66 F.3d at 1317 ("Congress' intent, as expressed through the statutory scheme, [was] to limit liability to employer-entities. . . . Accordingly, we hold that an employer's agent may not be held individually liable under Title VII." (citation omitted)); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that 'individuals are not subject to liability under Title VII.'" (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000))); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("[T]he district court's dismissal of plaintiff's Title VII claims against [the individual defendant] in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability.").

The present case, however, is somewhat different from the scenarios the Second Circuit has considered explicitly, in that McVay effectively pleads that Stefanou is the owner of Spa Thea, which does business as Andrew Stefanou Salon and Spa.  *See* Compl. at 2 ¶¶ 2–3, 3 ¶¶ 9–10.  Nevertheless, one of my colleagues in this District previously has considered whether a business owner may face liability under Title VII alongside the owner's business entity and has concluded that Title VII does not provide for such liability.  *See Maloney v. Connecticut Orthopedics, P.C.*, 47 F. Supp. 2d 244, 248 (D. Conn. 1999) (dismissing Title VII claims against

---

[6] Although the Court declines here to evaluate and decide arguments that might be made regarding McVay's other claims, the Court *sua sponte* addresses Plaintiff's Section 1981 claim in a separate Order to Show Cause filed concurrently with this decision on Defendants' pending motions

individual defendant-owners of professional corporation, in light of *Tomka*). Other District Courts in this circuit also have reached this conclusion. *See, e.g.*, *Padilla v. Sacks & Sacks LLP*, No. 19 Civ. 10021 (GBD), 2020 WL 5370799, at *2 (S.D.N.Y. Sept. 8, 2020); *Grundstrom v. Carrier Coach, Inc.*, No. 13 Civ. 832A (F), 2017 WL 8941207, at *11–*12 (W.D.N.Y. Mar. 7, 2017); *Jackson v. Ehgartner*, No. 15 Civ. 894 (GLS/TWD), 2015 WL 8029194, at *3 (N.D.N.Y. Sept. 4, 2015); *McCain v. Buffalo Wild Wings*, No. 11 Civ. 143, 2012 WL 298005, at *4 (D. Vt. Feb. 1, 2012); *Joseph v. HDMJ Restaurant, Inc.*, 685 F. Supp. 2d 312, 317–18 (E.D.N.Y. 2009). I find these cases persuasive, and accordingly apply the same rule to the case at the bar.

Therefore, the Court holds that McVay cannot pursue a claim against Stefanou individually under Title VII, and her claim against him is DISMISSED, with prejudice.

## IV.  CONCLUSION AND ORDERS

For the reasons set forth above, Defendants' motion to strike McVay's opposition and response to the Local Rule 41(a) notice is DENIED, and Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  McVay's CFEPA claim is DISMISSED WITHOUT PREJUDICE, and McVay's Title VII claim against Stefanou is DISMISSED WITH PREJUDICE.

The Parties are directed to meet and confer regarding a schedule for discovery and summary judgment.  The Parties shall submit to the Court, within **thirty (30) days** of this decision, a joint report substantially in the form of this District's standard Rule 26(f) Report of Parties' Planning Meeting.[7]

Finally, McVay is cautioned to prosecute this matter with greater vigor going forward.  A delay of nine months in filing an opposition to a motion is not acceptable.  Should McVay fail to

---

[7] This form is included as an appendix to this District's Local Rules, which are available at https://ctd.uscourts.gov/court-info/local-rules-and-orders.

pursue her claims diligently, the Court will consider imposing appropriate sanctions, which may include dismissal of the action.  *See* Fed. R. Civ. P. 16(f)(1); Fed. R. Civ. P. 41(b).

It is SO ORDERED.

Dated: New Haven, CT
       July 30, 2021

                                       *s/ Charles S. Haight, Jr.*
                                       CHARLES S. HAIGHT, JR.
                                       Senior United States District Judge